# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **460 Tennessee Street, LLC,** | ) |
| Appellant, | ) |
| v. | ) |
| | )   No. 09-2850-STA |
| **Telesis Community Credit Union;** | ) |
| Appellee. | ) |

## ORDER

This is an appeal from the November 5, 2009 Order of the United States Bankruptcy Court granting Telesis Community Credit Union's ("Telesis") motion to lift stay. Debtor 460 Tennessee Street, LLC filed this appeal (D.E. # 1) on December 15, 2009, and filed its brief on January 14, 2010 (D.E. # 3). On January 26, 2010, Telesis filed its brief (D.E. # 5), and on February 9, 2010, the Debtor filed a reply brief (D.E. # 6).

### I. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear bankruptcy appeals under 28 U.S.C. § 158(a). A bankruptcy court's findings of fact must be upheld unless clearly erroneous.[1] A bankruptcy court's conclusions of law are reviewed *de novo*.[2]

### II. BACKGROUND

---

[1] *In re Made in Detroit, Inc.*, 414 F.3d 576, 580 (6th Cir. 2005).

[2] *Id.*

After conducting a hearing on Telesis's Motion to Lift Stay, the bankruptcy court recounted the following underlying facts in its November 5, 2009 order:

The Debtor-in-Possession ("the Debtor") filed this Chapter 11 case on July 29, 2009. It is undisputed that Telesis is the holder of a promissory note made by the Debtor in the original principal amount of $ 3,000,000.00. It is also undisputed that Telesis holds a deed of trust on real property known as 460 Tennessee Street in Memphis, Tennessee (the "Real Property"), which secures indebtedness. The Debtor is the lessee on the Real Property, and the property is owned by the Memphis Center City Revenue Finance Corporation. . .[3] The Debtor's sole business is the operation and collection of rents from tenants at the Real Property.

In its order, the bankruptcy court noted that the dispositive question before the court was "whether the Debtor conveyed an absolute assignment of rents to Telesis or granted a security interest in the Debtor's rental revenues."[4] The court first acknowledged that under Tennessee law an assignment of rents is presumed to be a pledge of rents as security but the presumption can be rebutted. In this case, the court found that the clear unambiguous language of both the Deed of Trust and Assignment of Rents rebutted this presumption. More specifically, the court reasoned that both the Deed of Trust and Assignment contained terms such as "absolute," "irrevocable," and "unconditional" to describe the assignment of rents.[5]

---

[3] *In re 460 Tennessee Street, LLC.*, Mem. Op. Grant Mot. to Stay, 2 (Bankr. W.D. Tenn. Nov. 5, 2009).

[4] *Id*. at 3.

[5] Paragraph 3(a) of the Assignment states in part: "[a]s part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents . . ."

Next, the court noted that virtually the same language describing the assignment of rents appears in both the Deed of Trust and Assignment. Based on this similarity, the Debtor contended an ambiguity was created as to whether the parties intended to accomplish an absolute assignment of rents. The court, however, disagreed because additional language in both the Deed of Trust and Assignment explained why the assignment language was included in both documents.[6]

The court found further evidence of an absolute assignment based on the fact that the Debtor was only granted a revocable license to collect and receive all rents.[7] Additionally, the court relied on the similarities between the Assignment in the instant case and that in *In re Kingsport Ventures*, a case involving an absolute assignment, to support its holding. The court explained that four items present in *Kingsport Ventures* were also present here: (1) the language of the assignment was clear and unambiguous; (2) the Assignment of Rents provided that the

---

[6] The court cited paragraph 3(a) of the Assignment. "However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of the Borrower that in this circumstance this Assignment and the comparable Security Interest provisions create and perfect a lien on Rents in favor of Lender, which lien shall be effective as of the date of this Assignment, or the comparable Security Instrument provisions, or both, and such election shall not diminish or affect Lender's available remedies under any other Loan Document provisions."

[7] The court cited paragraph 3(b) of the Assignment and Deed of Trust. "After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums . . ., tenant improvements and other capital expenditures.

Debtor retained nothing more than a revocable license; (3) the assignment did not require the assignee to take any action in order to collect the rents after default; and (4) the assignment gave the assignee discretion regarding the application of rents collected by it after default.  As to the fourth factor, the court acknowledged that even if Telesis's discretion was more limited than that of the lender's in *Kingsport Ventures* that was only one factor in the court's overall analysis.

In its brief, the Debtor asserts that there are two issues on appeal: (1) whether the court erred in finding that Telesis successfully rebutted the legal presumption that the parties intended to create a security interest in the rental payments of the tenants of 460 Tennessee Street, LLC and (2) whether the court erred in finding that the Assignment of Rents was intended as an absolute assignment of rents rather than a security agreement in rents.[8]  The Debtor contends that the court erred on both counts.

The Debtor argues, like it did in the court below, that the Deed of Trust and Assignment of Rents read together are ambiguous and contradictory.  The Debtor reasons that because similar assignment language appears in both the Deed of Trust and Assignment of Rents Telesis is free to argue either that they have a security interest in the rents or an absolute assignment, whichever best suits their interests.  As such, the Debtor seems to contend that had the bankruptcy court conducted a full hearing on the merits rather than granting Telesis's motion, the court would have found the Assignment constituted a security agreement in rents.

In response in opposition, Telesis spends the majority of its brief recounting the bankruptcy court's ruling and expressing agreement with the court's holding.  Additionally,

---

[8] The Court notes that the Debtor/Appellant indicated in its Designation of Record and Issues on Appeal (D.E. # 1) that there were four issues to be presented.  However, in the brief before this Court, the Debtor only identified two.  As such, the Court will only address the two.

4

Telesis argues that based on the standard of review applicable to appeals such as this, any reversal of the bankruptcy court's holding by the Court would be unfounded.

In reply, the Debtor addresses the first and fourth factors set forth in *Kingsport Ventures*. As to the first factor, the Debtor reiterates its argument that while the language in the Assignment appears to be absolute when read in conjunction with the same language in the Deed of Trust it is clear that a security was given. In reference to the fourth factor, the discretion of the lender, the Debtor argues that such language as "enter upon and take and maintain full control of the mortgage property" and "operation or maintenance of the mortgaged property" is all indicative of a security interest. As such, the Debtor contends that the Assignment was for security and not an absolute assignment of rents.

### III. ANALYSIS

The bankruptcy court correctly pointed out that Tennessee courts have long recognized that a grant of a security interest in property and an absolute assignment of property are two distinct and allowable methods for creating credit against which a party may borrow funds.[9] An assignment of rents is presumed to be a pledge of rents as a security.[10] This presumption, however, is not conclusive and may be rebutted with evidence that the assignment of rents was an absolute assignment rather than a pledge of security.[11]

To determine whether an assignment of rents is an absolute assignment or a pledge of security, a court must analyze the language and provisions of the assignment using general

---

[9] *In re Kingsport Ventures, L.P.*, 251 B.R. 841, 846 (Bankr. E.D. Tenn. 2000).

[10] *Id.* at 847.

[11] *Id.*

principles of Tennessee contract law.[12] "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles."[13]  In this analysis, the court "does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written."[14]  The words used in the contract are "given their usual, natural, and ordinary meaning."[15]  A contract must be enforced as it is written, even where its terms seem harsh or unjust, unless there is proof of fraud or mistake.[16]

As the Court previously noted in the case at bar, the parties entered into a separate Assignment of Rents in addition to the Deed of Trust.  Paragraphs 3(a) of both the Assignment of Rents and the Deed of Trust contain the following language in part:

> As part of the consideration for the Indebtedness, Borrower ***absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of the Borrower to establish a present, absolute, and irrevocable transfer and assignment to the Lender of all Rents*** and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of the Borrower. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. ***Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.*** For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be part of the "Mortgaged Property" as that term is defined in the Security Instrument.

---

[12] *Id.*

[13] *Id.* (quoting *Gray v. Estate of Gray*, 993 S.W.2d 59, 64 (Tenn. Ct. App. 1998)).

[14] *Id.* (quoting *Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993)).

[15] *Id.*

[16] *Id.*

The Debtor admits that the Assignment contains language that appears to make the assignment of rents absolute but contends that since the language also appears in the Deed of Trust a security was created. To support this position, the Debtor cites *In re 5877 Poplar*.

In *In re 5877 Poplar*, a case involving the assignment of a hotel's room rents, the bank drafted a deed of trust containing an assignment with language similar to that present in the case at bar. More specifically, the terms "absolutely" and "unconditionally" were used to describe the assignment of room rents.[17] The Debtor notes that in spite of this language the court found a security interest and not an absolute assignment had been created. As such, the Debtor urges this Court to make a similar finding.

First, while it is true that the court in *In re 5877 Poplar* concluded that the language in the deed of trust created a security interest and not an absolute assignment of rents despite the "absolute" and "unequivocal" qualifiers, the assignment in that case also stated "and grants the Lender [Bank] a security interest."[18] Here, no such language appears in either the Deed of Trust or Assignment of Rents.

Second, the court in *In re 5877 Poplar* distinguished itself from *Kingsport Ventures*. The court stated, "the language in the assignment document in *Kingsport Ventures, L.P.* eliminated any doubt possibly inferred by the parties by clarifying that the assignment is "not an assignment for additional security only."[19] Similarly, Paragraph 3(a) of both the Deed of Trust and Assignment of Rents in this case, state "[b]orrower and Lender intend this assignment of Rents

---

[17] *In re 5877 Poplar*, 268 B.R. 140, 147 (Bankr. W.D. Tenn. 2001).

[18] *Id*.

[19] *Id*.

to be immediately effective and to constitute an absolute present assignment and *not an assignment for additional security only."* Following the court's reasoning in *In re Poplar*, this language eliminates any doubt that the assignment was intended to serve as an absolute assignment of rents rather than a security interest.

The Debtor also acknowledges that the court's holding in *Kingsport Ventures* stands in opposition to the argument it proffers at present. In fact, the bankruptcy court relied heavily on the court's holding in *Kingsport Ventures* in support of its ruling. This Court, too, finds such reliance appropriate.

In *Kingsport Ventures*, as noted above, the court found four factors relevant to its determination that the assignment at issue was an absolute assignment and not a security pledge: (1) the clear and unambiguous language of the assignment; (2) the debtor retained nothing more than a revocable license to operate the property and collect the rents; (3) the assignment did not require the assignee to take any action in order to collect the rents upon default; and (4) the assignment gave the assignee total discretion regarding the application of rents after default.[20] Here, the bankruptcy court found the *Kingsport Ventures* analysis persuasive and reasoned:

> the court finds that the language of the assignment is clear and unambiguous in its stated intent to create an absolute assignment. Second, the Assignment of Rents provides that the Debtor retains nothing more than a revocable license as expressly described in the parties' documents. Third, the assignment does not require the assignee to take any action in order to collect the rents after an event of default. . . Fourth, the assignment gives the assignee discretion regarding the application of rents collected by it after default.[21]

This Court agrees fully with the bankruptcy court's application of *Kingsport Ventures* to

---

[20] *In re Kingsport Ventures*, 251 B.R. at 848.

[21] *In re 460 Tennessee Street, LLC.*, Mem. Op. Grant Mot. to Stay, at 11.

the case at bar.  First, it is undisputed that Paragraph 3(a) of both the Assignment of Rents and Deed of Trust contain language that states "Borrower *absolutely and unconditionally* assigns and transfers to Lender all Rents.  It is the intention of the Borrower to establish a *present, absolute and irrevocable transfer and assignment* to Lender of all Rents . . ."  The Court finds such language to be a clear and unambiguous expression of the parties intent to create an absolute assignment.  Second, just as in *Kingsport Ventures*, the Assignment of Rents provides that the Debtor retains nothing more than a revocable license.  The Assignment of Rents states "[s]o long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Instrument."[22]  Third, the Assignment does not requires Telesis to take any action in order collect the rents after an event of default.  The Assignment reads " [f]rom and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall without notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid."  Finally, just as in *Kingsport Ventures*, the Assignment gives Telesis discretion regarding the application of rents collected by it after default.  Paragraph 3(d) of the Assignment states in pertinent part:

> If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for

---

[22] Paragraph 3(b) of the Assignment of Rents.  The language is identical in Paragraph 3(b) of the Deed of Trust except the word "Instrument" is replaced by "Assignment."

>the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of the Assignment, or for such other purposes as Lender in its discretion may deem necessary or desirable.

In its reply brief, the Debtor argues, just as it did below essentially, that some of the language in Paragraph 3(d) is commonly used to address a "secured creditor taking the property over." For instance, the Debtor cites to the "enter upon and take and maintain full control of the mortgaged property," and "operation or maintenance of the mortgaged property" language in support. The bankruptcy court addressed this argument in its order. The court stated:

>the court notes, however, that the majority of this provision does not address the collection of rental proceeds but the maintenance and operation of the physical property, i.e. the "Mortgaged Property." By definition, rents are not included in the "mortgaged property." Moreover, even if Telesis's discretion is more limited here than was the lender's in the *Kingsport Ventures* case, this was only one factor suggested as pertinent in the overall analysis of assignment versus security instrument.[23]

This Court agrees with the bankruptcy court's analysis of this factor and therefore sees no reason to address this issue further.

As an aside, the Court notes that the Debtor seems to assert somewhat of an inconsistent position regarding the applicability of *Kingsport Ventures* to the case at bar. In its original brief, the Debtor described *Kingsport Ventures* as having the "same issue as our case" and a contrary holding to that of *In re 5877 Poplar*. The Debtor went on to state "so there is a split of authority on the issue." Then, however, in its reply brief the Debtor states "Appellant submits that *Kingsport Ventures* is not the controlling case in the case at bar."

---

[23] *In re 460 Tennessee Street, LLC*., Mem. Op. Grant Mot. to Stay, at 11-12.

The Court, however, disagrees with the Debtor's characterization of the holdings in *In re 5877 Poplar* and *Kingsport Ventures* as a "split of authority." The language in the assignments was factually distinct. As such, each court's application of the relevant law lead to alternate outcomes. These circumstances do not constitute a split of authority.

Ultimately, based on the clear and unambiguous language of the Assignment of Rents and Deed of Trust and the applicability of the *Kingsport Venture* factors to the case at bar, the Court finds that Telesis has rebutted the legal presumption that the parties intended to create a security interest in rents. The Court finds that the effect of the Assignment and the Deed of Trust is an absolute assignment of rents.

## IV.  CONCLUSION

For the foregoing reasons, the bankruptcy court judge's order is **AFFIRMED**.

**IT IS SO ORDERED**.


                **s/ S. Thomas Anderson**
                S. THOMAS ANDERSON
                UNITED STATES DISTRICT JUDGE

Date: July 30th, 2010.